WHITE, Adm'x &c., vs. FITZGERALD, Adm'r &c., and others.

An instrument in the following form: "The following is the property owned jointly or as described below, by G. F. and J. W.: 100 acres in, &c., bought from O. W., and since sold for $7,500 to V. S.; $2,100 paid, out of which J. W. received $1,000. Two acres on the hill, &c.; each paid half in full, and sold by G. F for $2,600, no part of which has been given to J. W. Six lots in, &c.—one third undivided belongs to J. W., as per deed on record. 19 acres on, &c., bought of D. U.; the whole of the purchase money was paid by J. W.: G. F. paid A. B, $50 for getting the land. See the deed for particulars. The titles to the above lands are in the name of G. F., and on record, which the deeds will explain. I certify that the above statement is correct, except the taxes and other expenses. (Signed) G. F."—*Held* not to show a *partnership* between G. F. and J. W. in purchasing and selling lands.

As to the nineteen acres last mentioned therein, this agreement is equivalent to a written declaration signed by G. F. that he held the legal title to one-half of the land *in trust* for J. W.

No trust in favor of J. W. results by operation of law from the facts stated in said instrument.

The instrument is a "conveyance," within the meaning of sec. 7, ch. 108, R. S., and is therefore not void by the provisions of sec. 6, ch. 106, R. S.

If such written declaration of trust had been made at the same time as the deed of the land to G. F., and had been sealed, witnessed and acknowledged so as to be entitled to record, it would have had the same effect as if the declaration of trust had been in the deed to G. F., and would, under our statute, have vested the legal title to one undivided half of the land in J. W,

The instrument in this case not having been so executed, *quære* whether it might not be treated in equity as an agreement to execute a declaration of trust in due form of law.

The instrument is valid as the creation of an express trust under the provisions of subd. 5, sec. 11, ch. 84, R. S.

APPEAL from the Circuit Court for *Milwaukee* County.

This action was originally brought by John White against *Maurice Fitzgerald*, administrator of Garret M. Fitzgerald, deceased, and four persons, children and heirs-at-law of said Garrett, and one *Mullen*. The complaint alleges the following facts: In 1852, during the life-time of said Garrett, he and the plaintiff entered, under an oral agreement, into a partnership for the purchase and sale of real estate in the county of Milwaukee. By said agreement the title to all of said lands was, for convenience merely, to be taken in the name of said Garrett; each

of the parties was to advance money to effect said purchases, as might be convenient, or as might be agreed upon between them at the time ; the lands were to be sold as soon as a sale could be made at a profit, or as might be agreed, and out of the proceeds of each sale each party was to be paid the sum he had advanced toward the purchase of the parcel sold, with interest, and the remainder was to be divided between them equally ; and as the plaintiff was expected to advance more money than said Garrett, the latter was not to receive any compensation for his services in the business. In pursuance of this agreement, plaintiff and said Garrett, in June, 1854, purchased of D. A. J. Upham certain described lands containing nineteen and one half acres, for $680, the whole of which amount plaintiff advanced at the time of the purchase, and said Garrett never repaid to him any part thereof, but did pay to one Bade, about the same time, $50 for some right or claim which Bade had to purchase the land from Upham. In pursuance of said partnership agreement, and for the purpose of declaring plaintiff's right and title to and interest in said tract of land among others, said Garrett, in January, 1857, delivered to plaintiff a written instrument, which is set out in full in the complaint, and is as follows : " Milwaukee, January 3d, 1857. The following is the property owned jointly, or as described below, by G. M. Fitzgerald and *John White:* One hundred acres in the town of Lake, bought from O. M. Walker, and since sold for $7,500 to Victor Schully; twenty-one hundred dollars paid, out of which *John White* received one thousand dollars. Two acres on the hill in the Sixth Ward ; each paid half in full, and sold by G. M. Fitzgerald for twenty-six hundred dollars, no part of which has been given to *John White.* Six lots in the Third Ward of this city ; onethird undivided belongs to *John White,* as per deed on record. Nineteen acres on the lake shore, bought of D. A. J. Upham ; the whole of the purchase money was paid by *John White ;* G. M. Fitzgerald paid A. Bade fifty dollars out of his

pocket, for getting the land; see the deed for particulars.—
The title to the above lands are in the name of G. M. Fitz-
gerald, and on record, which the deeds will explain. I certify
that the above statement is correct, except the taxes and other ex-
penses. (Signed) GARRET M. FITZGERALD."—The land purchas-
ed of Upham never having been sold, said Garrett, a few days
before his death, viz. on the 15th of September, 1859, without
the knowledge of the plaintiff, executed a deed of the same to
the defendant *Mullen*, dated on the day last mentioned, and
caused it to be delivered to *Mullen*, who, however, did not pay
or agree to pay any consideration therefor, but the deed was
made out and sent to him without his request or procurement
and solely for the use and benefit of the plaintiff. All the rest
of the partnership business was settled in the life-time of said
Garrett. Prayer for judgment, that plaintiff is equitable own-
er of an undivided part of said tract of land; that under the
deed from Garret Fitzgerald to *Mullen* the latter held the land
in trust for plaintiff; that said *Mullen*, and all persons claiming
under or through him or Garrett Fitzgerald, be restrained from
claiming title &c. ; that the land be sold and the proceeds ap-
plied according to the terms of said partnership agreement;
and for general relief.

*Maurice Fitzgerald*, administrator of said Garrett, answered,
first, by a general denial; secondly, by an averment that com-
missioners had been appointed on the 22d of October, 1859,
to adjust claims against the estate of said Garrett, with an or-
der limiting six months for the presentation of claims, and
that by our statute this action could not be commenced until
the expiration of one year from said 22d of October, 1859 ;
thirdly, that the claim of plaintiff had not been presented to
said commissioners as required by law; fourthly, that in a suit
brought by said administrator against said *Mullen*, in March,
1860, in said circuit court, a decree was rendered in June fol-
lowing adjudging that the conveyance executed by Garrett
M. Fitzgerald to *Mullen*, on the 15th of September, be cancell-

ed, and the lands therein described adjudged to be the property of the estate of said Garrett.—The defendant *Mullen* did not answer.—The original plaintiff having deceased, the suit was prosecuted in the name of his administratrix.

On the trial, the circuit judge found as facts: That *John White* and Garret M. Fitzgerald entered into a verbal agreement of copartnership for the purchase and sale of real estate, and that such copartnership existed between them at the time of the purchase of the premises mentioned in the complaint; that said premises were purchased by them, and the deed thereof taken in the name of Garrett M. Fitzgerald with the knowledge and assent of said *White*; that it was conveyed to *Mullen* by Fitzgerald as security for an indebtedness of the latter to *Mullen;* and that *Maurice Fitzgerald,* as administrator, paid to *Mullen* said indebtedness, and, by order of said circuit court [in the above mentioned action against *Mullen*], the premises were conveyed to said administrator, who now holds the same. As conclusions of law, the court held that the verbal agreement between *White* and Garrett M. Fitzgerald for the purchase and sale of real estate, was void; that there was no trust in favor of *White* in respect to the land in suit, resulting from the purchase and conveyance of the same, but that conveyance was conclusive in law as against said *White* and those claiming through or by him, other than his creditors. Judgment was accordingly rendered for the defendant *Maurice Fitzgerald,* adm'r &c., and against the plaintiff; from which the plaintiff appealed.

No evidence was offered of a partnership between *John White* and Garrett M. Fitzgerald, except the written instrument set out in the complaint. The evidence upon other questions raised by the pleadings it has not been thought necessary to state.

*Levi Hubbell,* for appellant:

The written instrument executed by Garrett M. Fitzgerald is evidence of a partnership in the purchase and sale of lands,

and in the purchase of the land in question.   The fact of a ·
partnership being established, the particular terms or conditions
of it may be proved by parol.—But the instrument is also a
declaration of joint ownership, and that he, Fitzgerald, held
the title for both.   It is a *declaration of a trust*, valid and suf-
ficient under our statutes.   R. S., ch. 106, sec. 6; ch. 108, sec.
7.   This instrument is a "conveyance."   (1.) It creates an es-
tate and interest in the lands therein described, in *John White*.
(2.) It "surrenders" the estate and interest of G. M. Fitzgerald
therein to *John White*, to the extent mentioned, viz. to the ex-
tent of the proportion of the purchase money paid by *White*.
—The plaintiff's interest in the land is not claimed as a *result-
ing* trust; it grows out of and depends upon the written instru-
ment; but its extent is explained and measured by the money
paid.   The writing creates an *express* trust.   It would have
been a valid declaration of a trust under the original statute,
29 Charles II, Cap. 3, as adopted in New York, and under which
most of the reported cases were decided.   The evident design
of the New York revisers was to abridge and simplify the lan-
guage, and not to abridge the means of declaring or evidenc-
ing the creation or existence of a trust.   1 Laws of N. Y.,
1813, ch. 49, p. 79; 3 R. S., N. Y., p. 655, note to sec. 6.
Our statutes are the same as the Revised Statutes of New York
on this point; and that no substantive change in the law was
made, is evident from the following authorities; Kent's Comm.,
sec. 60, p. 299; *Steere v. Steere*, 5 Johns. Ch. R., 1; Hill on
Trustees, ed. by Wharton, pp. 98, 99; *Malin v. Malin*, 1 Wend.,
625, 656–8; *Day v. Roth*, 18 N. Y., 453; *Suares v. Pumpelly*,
2 Sandf. Ch., 336; *Gomes v. Bank*, 4 Sandf. (S. C.), 106, 108.
Counsel also argued that the instrument in question operated
as an *estoppel* against the administrator and heirs of Garrett M.
Fitzgerald, from denying *White's* joint ownership of the land.

*James Mitchell*, for respondent, contended that the written
instrument relied on did not show a partnership in the pur-
chase and sale of real estate, and that the facts therein stated

did not create a resulting trust in favor of *White*, citing to the last point R. S., ch. 84, sec. 7, and *Garfield v. Hatmaker*, 15 N. Y., 478–9.

*By the Court*, DOWNER, J. The only evidence of a partnership between *John White* and Garret M. Fitzgerald is the writing set out in the complaint. By this it appears that four different purchases of land were made, the title to which was taken in the name of Fitzgerald; in three of the purchases *White* was interested as *half owner*, in the other as *owning one third*. We think it insufficient to establish a partnership in the purchase and sale of real estate. We rather infer from it that at each purchase of land there was an agreement what interest each should have therein. Viewing it solely in relation to the land described in the complaint, it is equivalent to a declaration in writing, signed by Fitzgerald, that he and *White owned this land jointly*, each owning an undivided one half thereof; that *White* had paid the purchase money, or about fifteen sixteenths thereof, and that the conveyance of the legal title was made to Fitzgerald. This is the same in legal effect as though Fitzgerald in the instrument had said that he held the legal title to one half of the land, and the same was conveyed to him for the benefit of or in trust for *White*. It is a declaration of trust. Is it sufficient to convey to or give *White* a legal or an equitable interest in the land? For aught that appears the title to this land was taken in the name of Fitzgerald with the consent of *White*. There can be no resulting trust in favor of the latter. R. S., ch. 84, sec. 7. If there was a resulting trust, *White* would be entitled to an interest in the land equal to the share of the purchase money he paid. But the written instrument states that the land is *owned jointly* by *White* and Fitzgerald; that is, each owns one half. The instrument is not void by reason of the provisions of sec. 6, chap. 106, R. S. That section requires that the trust should be created or declared by deed or con-

veyance in writing subscribed by the party creating or declaring the trust. It prescribes no particular form by which the trust may be declared or created. The instrument may even be without a seal, witnesses or acknowledgment, and yet be a conveyance, within the meaning of the term "conveyance" as defined by sec. 7, ch. 108, R. S.

But the more difficult question arises under chapter 84, "Of Uses and Trusts." Uses and trusts, except as authorized by that chapter, are abolished. Section three provides that "Every person who, by virtue of any grant, assignment, or devise, now is or hereafter shall be entitled to the actual possession of lands, and the receipt of the rents and profits thereof, in law or equity, shall be deemed to have a legal estate therein, of the same quality and duration, and subject to the same conditions, as his beneficial interest." And section five further provides that conveyances shall be made directly to the person in whom the right to the possession and the profits shall be intended to be vested, and if made to one person for the use of another, except as otherwise provided in that chapter, no estate or interest, legal or equitable, shall vest in the trustee.

Thus what are called passive trusts are converted into legal estates vested in the *cestui que trusts*. The trust we are considering is a passive trust. If Upham had conveyed the land to Fitzgerald, expressing on the face of the deed that he was to hold one half of it in trust for *White*, the latter would have taken the legal title to one half of the land. If Fitzgerald, at the same time he received the deed from Upham, had executed under his hand and seal, duly witnessed and acknowledged, so that it could be recorded, an instrument in writing in and by which he declared that the conveyance by Upham to him of the land in question was, as to one half thereof, made in trust for the use of *White*, it would have had the same effect as a transfer of the legal title to *White*, as if the declaration of trust had been in the deed from Upham.

These deeds made at the same time might have been construed each as part of one and the same transaction. Can it make any difference that a few days or even weeks elapsed between the execution of the first deed and the declaration of trust? It appears to us not, unless Fitzgerald had in the mean time transferred the land to innocent *bona fide* purchasers.

But the instrument we are considering is not under seal, has no witnesses, and is not acknowledged, and could not be recorded. Can such an imperfect instrument as this, taken in connection with the deed of Upham to Fitzgerald, vest the legal title to the land in *White*? If not, can it be regarded as a contract for a conveyance? It is a familiar principle, that if A gives to B a written instrument under his hand in form conveying land, but it is defective as a conveyance for the want of a certificate of acknowledgment, seal or other formality, a court of equity will treat it as an agreement to convey, and decree a conveyance. Here is an instrument which, if under seal, witnessed, and acknowledged, might have vested in *White* the legal title to the land. Why should it not be treated as an agreement to execute a declaration of trust in due form of law?

If it cannot be enforced as such an agreement, is it within the provisions of section eleven of said chapter? That section provides that express trusts may be created for the purposes therein mentioned. It then enumerates four classes of express trusts, being the same as those in the New York revised statutes, and which are usually called active trusts; then follows the fifth subdivision, which is not found in the New York statutes (from which chapter 84 is copied), and first appeared in this state in the Revised Statutes of 1849. It authorizes express trusts to be created " for the beneficial interest of any person or persons, where such trust is fully expressed and clearly defined upon the face of the instrument creating it, subject to the limitations as to time prescribed in this title." We know of no judicial decision giving a con-

struction to this fifth subdivision. It appears to us to be broad enough to include such trusts, passive and active, as are not otherwise provided for or prohibited, whenever they are fully expressed and clearly defined upon the face of the instrument creating them. We see no reason why any written instrument that was sufficient as a declaration of trust before chapter 84 was incorporated into our laws, and which is not affected by the limitations as to time, is not sufficient now; or at least so far valid that the *cestui que trust* will be protected. In cases not otherwise provided for he has a right to the aid of a court of equity as formerly. Most passive trusts are however carried into effect as legal estates by virtue of the statute; and other trusts are valid as powers. There can be no doubt that the instrument in question, but for this chapter, would be regarded as a good and valid declaration of trust. *Fisher v. Fields*, 10 Johns., 495; 2 Washb. on Real Prop., 190 et seq., and authorities there cited. We hold, therefore, that Fitzgerald held the title to one half of the land in trust for *White*, and that his heirs should be adjudged to convey to the plaintiff below as administratrix of *John White*, deceased, for the benefit of his heirs or creditors, an undivided one-half of the tract of land conveyed by Upham to said Garrett M. Fitzgerald in his life-time; and that a judgment should be entered barring the other defendants from all interest in the land so conveyed.

As to the claim of the plaintiff below to recover such portion of the purchase money over one half as *John White* advanced for the purchase of the property, as a personal demand against the administrator (it not having been passed upon by or presented to the commissioners appointed to hear and examine claims against the estate of Fitzgerald), it is barred. Whether there ever was a lien on Fitzgerald's part of the land for this money, and if there was, whether it could be enforced without the claim being presented to and allowed by the commissioners or county judge, are questions which have not been

argued by counsel, and which we do not pass upon, but leave the plaintiff the right to raise them in the court below if she deems best.

The judgment of the circuit court is reversed, with costs, and cause remanded for further proceedings.

COLE, J., dissents.