PERKINS and others, Appellants, vs. BURLINGTON LAND & IMPROVEMENT COMPANY, Respondent.

*November 30, 1901—January 7, 1902.*

*Trusts: Active or passive? Express trusts: Trustee as representative of unborn beneficiaries: Judgment: Conclusiveness.*

1. A deed conveyed land to the grantee, his heirs or assigns, in trust to receive the rents and profits for a term not exceeding one year and, with the same and the proceeds of the sale of so much of the land as might be necessary, to pay the just debts of the grantor. After such payment the trustee was to permit the wife of the grantor to receive the rents and profits for life, she to pay the grantor's son such sums therefrom as she might deem proper. In case the wife should die during the lifetime of the son, the trustee was to pay the son such sums from the rents and profits as he might deem proper until the son should reach the age of twenty-five years, after which time said son was to receive the whole of the rents and profits during life. If the son should survive the wife and have issue, the trustee was to convey the land, or the proceeds thereof, to such issue. If the son should die during the lifetime of the wife without issue, the trustee was immediately to convey a part of the premises to the wife and the other part to other persons. If the grantor should survive his wife or his son, the trustee or his heirs were to convey the land to such persons as the grantor might direct by will or otherwise. The trustee was also given authority to sell the land in case of necessity arising out of the wants of the widow or of the son after her death, or at any time upon the joint wish of both the wife and the son, with the consent of the trustee, and to invest the proceeds in such manner as he might deem proper for the use of the parties in interest. *Held,* that the deed created an active trust under sec. 4, ch. 57, R. S. 1849 (sec. 2074, Stats. 1898), and an express trust within the meaning of sec. 11, ch. 57, R. S. 1849 (sec. 2081, Stats. 1898); and that the legal estate did not vest in the children of the son as they came into being, under sec. 3, ch. 57, R. S. 1849 (sec. 2073, Stats. 1898), but remained in the trustee.

2. The trustee in such case took possession and control of the property under the trust deed. After the death of both the grantor and his wife, and before any children were born to the son, the latter brought an action against the trustee for a construction of the trust deed, and it was adjudged therein that the trust deed was void and that the son was the owner of the land. The judgment

directed the trustee to convey the land by quitclaim deed to the son, and he did so accordingly. *Held,* that the trustee represented such issue as might subsequently be born to the son, and that the judgment was binding upon them.

APPEAL from a judgment of the circuit court for Racine county: FRANK M. FISH, Circuit Judge. *Affirmed.*

This is an action of ejectment commenced May 9, 1900. Both parties claim title from one Origen Perkins, deceased. Issue being joined, and a trial by jury being waived, the cause was tried by the court, and at the close of the trial the court made findings, which, with the undisputed facts, are to the following effect:

(1) On March 14, 1850, Origen Perkins was the owner in fee simple of the whole of the lands hereinafter mentioned, and, being about to move to California, and for and in consideration of love and affection for his son, Frederick S. Perkins, made, executed, and delivered to one Dr. Edward G. Dyer, of Burlington, Wisconsin, a trust deed, whereby he gave, granted, sold, and conveyed to him, his heirs and assigns, the undivided two-thirds of the lands therein described, including the lands in question, upon the trusts and to the uses, intents, and purposes therein expressed, limited, and declared, to have and to hold the same to himself, his heirs and assigns, to his and their use and confidence, nevertheless, to receive the rents and profits for a term not exceeding one year from that date, and with the same, and by the sale of so much land as he might find sufficient and necessary, to pay his just debts, and immediately after such payment to permit his wife, Julia A. Perkins, to receive the rents and profits of such lands to her use for her life; she to pay to Frederick S. Perkins such sum of money yearly as she might deem proper out of the rents and profits of the same. Then follows in the trust deed the following provisions:

" And in case the said Julia shall die in the lifetime of the said Frederick S. Perkins, then the said Edward G. Dyer to pay to the said Frederick such sum or sums out of the rents

and profits of the said lands as he may deem proper until the said Frederick shall arrive at the age of twenty-five years, and then, and as soon as the said Frederick shall arrive at said age of twenty-five, he shall receive the whole rents and profits of said lands to his use during his life. And in case the said Frederick shall survive the said Julia, and shall have issue, then the said lands, or the proceeds thereof, shall be conveyed by the said Edward G. Dyer to the said heirs of his body of the said Frederick S. Perkins, for their use and the use of their heirs, forever. And in case the said Frederick S. Perkins shall die, without issue, in the · lifetime of the said Julia, wife of the said Origen Perkins, then immediately upon the death of the said Frederick the said Edward G. Dyer shall convey five eights ($\frac{5}{8}$) of the aforementioned two-thirds of said lands, tenements, heredi- taments, and appurtenances of said Julia and her heirs, to her and their use forever, and three eights ($\frac{3}{8}$) of the afore- mentioned two-thirds of said lands, tenements, heredita- ments, and appurtenances to the heirs of Edward Perkins, deceased, to their use forever.

"The said Edward G. Dyer shall have right, power, and au- thority to sell and convey any and every part of the before- granted premises and lots of lands in case of necessity arising out of the situation or wants of the said Julia in her lifetime, or after her death in case of necessity arising out of the situation or wants of Frederick S. Perkins, or upon the joint wish of the said Julia and Frederick S. at any time, with the consent of the trustee; the proceeds to be invested in such safe manner as the trustee deems proper for the use of the parties in interest. And if the said Origen Perkins shall survive his wife, the said Julia, or his son the said Frederick S., then the said Edward G. Dyer, or his heirs, shall convey the premises to such person or persons and in such manner as the said Origen Perkins shall direct by his will or otherwise. And the said Edward G. Dyer, on his part, accepting the trust aforesaid, doth, for himself, his executors, administrators, and assigns, covenant, grant, and agree to and with the said Origen, Julia, and Frederick S. Perkins, and each of them, their, and each of their, repre- sentatives, faithfully to perform and fulfill the trusts afore- said, and every part thereof, according to the true intent and meaning of these presents."

(4) At the time of the execution and delivery of such trust deed (March 14, 1850) the said Origen Perkins made and

executed to said Edward G. Dyer another trust deed, for the benefit of his wife Julia A. Perkins, in and by which he granted, sold and conveyed to said Dyer, in trust, the other undivided one-third of the same property. By virtue of the two trust deeds the trustee took possession and control of all the property described therein, and collected the rents and profits thereof, and fully managed and controlled the same.

(2) At the time of making such trust deeds the said Origen Perkins had but one child,— and he by a former marriage,— the said Frederick S., who was then about seventeen years of age, and unmarried, and had no children; and the said Julia A. was his stepmother.

(3) In March, 1853, Origen Perkins died intestate in California, leaving his widow, Julia A., and his son, then a little over twenty years of age and unmarried, as his only child and heir at law, him surviving. On August 19, 1858, the said Julia A. Perkins conveyed by deed to the said Frederick S. Perkins all her interest under said trust deed so made for her benefit. On May 1, 1859, the widow, Julia A., died.

On April 1, 1861, the said Frederick S. Perkins (being then twenty-eight years of age, and living in Brooklyn, New York) commenced an action in the circuit court for Racine county against the said trustee, Edward G. Dyer. The complaint in that action mentioned some of the facts above stated, and that the rents and profits of said undivided two-thirds were only $175 per annum; that Frederick S. Perkins had had opportunities to sell a large portion of said lands at advantageous prices, but could not, by reason of such trust deed; that the trustee had refused to join in a conveyance by reason of an alleged erroneous construction he had placed upon such trust deed — and prayed judgment that such trust deed be construed by the court, and the trustee be adjudged to convey the said undivided two-thirds of said lands, by quitclaim deed, to the plaintiff therein, Frederick

S. Perkins, and that the title in fee simple be adjudged to be vested in the plaintiff. The trustee, Dr. Dyer, appeared therein by attorney, and answered such complaint, stating some of Origen Perkins's reasons for making the trust deed, and praying a construction thereof. The facts so stipulated in that case, and as found by the court therein, April 25, 1861, were, so far as applicable to that case, the same as stated above. And, as conclusions of law, the court found therein that the trust deed was wholly void and of no effect; that Frederick S. Perkins was the owner in fee simple of the undivided two-thirds of said lands; that the plaintiff therein, Frederick S. Perkins, was entitled to the relief so demanded in his complaint; that the trustee be perpetually enjoined from exercising or executing any supposed trust created by such deed, and from exercising any control over such property, and was thereby ordered to convey the same by quitclaim deed to Frederick S. Perkins; and judgment was ordered accordingly, and such judgment was thereupon so entered April 25, 1861.

In obedience to such judgment the said trustee executed and delivered to said Frederick S. Perkins, by quitclaim deed, all of said lands immediately after the judgment was so entered. On May 1, 1865, Frederick S. Perkins married, and the four plaintiffs herein are the children of Frederick S. Perkins by the said marriage, and were born respectively as follows: *Frederick W.*, in 1866; *Robert S.*, in 1870; *Henry E.*, in 1873; and *Edward W.*, in 1875. On May 18, 1877, Frederick S. Perkins's first wife, and the mother of the plaintiffs herein, died. In 1888 or 1889 Frederick S. Perkins again married, and had four children born to him by such second marriage, and they were all still living and under age.

(5) Shortly after the making and entry of the judgment of April 25, 1861, Frederick S. Perkins took possession of the property mentioned in the trust deed, as the sole heir at law

of the said Origen Perkins, deceased, and remained in the absolute, exclusive, and adverse possession thereof, managing and controlling the same as his own property, selling and otherwise disposing of the same down to the time of his death.

(6) The plaintiffs were reared and supported by said Frederick S. Perkins, up to the time they respectively reached their majority, upon and out of the rents, profits, and proceeds of said property. On March 12, 1887, Frederick S. Perkins delivered to the plaintiff *Frederick W. Perkins* a conveyance in fee simple of one of the lots described in said trust deeds.

(8) And about the same time he conveyed another of said lots to the plaintiff *Robert S. Perkins.*

(10) On March 17, 1892, *Frederick W. Perkins* and *Robert S.* conveyed said lots for a valuable consideration, and have ever since retained the consideration.

(13) On April 15, 1893, " the said Frederick S. Perkins and wife made, executed, and delivered to the defendant herein a deed of conveyance of the property described in the complaint herein, with full covenants of seisin and warranty, for the consideration of $16,000, which was then and there paid by said defendant to the said Frederick S. Perkins; and the said defendant, pursuant to said conveyance, took possession of the premises described in the complaint, and improved the same, and has ever since been in the possession thereof; and said defendant has sold many lots conveyed to it by the said Frederick S. Perkins in said conveyance, not described in the complaint, and buildings have been erected upon said lots so sold, by the grantees in said respective deeds, to the number of at least six, and the said defendant has expended in taxes upon the property so purchased the sum of $487.17, and has laid out and expended in permanent and valuable improvements upon said property since the said purchase, and in pursuance thereof, $5,000."

(12) On January 18, 1898, the plaintiff *Edward W.* took a conveyance of three lots, being a part of the property described in the trust deeds, and has ever since retained the same and the title thereto.

(9) On April 19, 1899, Frederick S. Perkins and wife conveyed to the plaintiff *Robert S.* two lots described in such trust deeds.

(3) On October 1, 1899, Frederick S. Perkins died.

(11) Shortly after his death the plaintiffs herein learned of the facts stated in such findings from 1 to 4, inclusive.

As conclusions of law, the court found, in effect, that the trust deed of two thirds of the property, a large portion of which is quoted above, was absolutely null and void, as an attempt to create a perpetuity and to suspend the absolute power of alienation for a period of more than two lives in being at the time of its execution and delivery, and that the same was not within the exception thereto; that, the trustee having taken possession of said land pursuant to such two trust deeds, the action of Frederick S. Perkins against him, and the judgment therein, absolutely divested all the right, title, and interest of said Dyer, as such trustee, in or to said lands; that said trustee having taken possession and control of said property by virtue of said two trust deeds, and having been given the power of sale for certain purposes, as appears in the trust deed for the benefit of Frederick S. Perkins, as quoted above, and as in case of the exercise of such power he would have held the proceeds of such sale for the benefit of any child or children of Frederick S. Perkins, and as by the terms of such deed the said trustee was to convey to such children after the death of said Frederick S. Perkins upon certain contingencies therein set forth, the said trustee, therefore, was thereby made, at least until the birth of any such child, the sole representative of the contingent interests intended to be conferred upon such child or children by such trust deed, and hence in the suit against

him terminating in the judgment of April 25, 1861, he represented all contingent and other interests intended to be created by such trust deed, and represented all such unborn. children, and hence all such interests so intended to be created by such trust deed were cut off and determined by such judgment of April 25, 1861; and therefore the plaintiffs have no right, title, or interest in the lands described in the complaint herein, and the defendant does not unlawfully withhold the possession thereof from them.

Judgment was ordered dismissing the complaint, with costs. From the judgment so entered November 26, 1900, the plaintiffs appeal.

For the appellants there were briefs by *Quarles, Spence & Quarles,* and oral argument by *T. W. Spence.* They contended, *inter alia,* that the trust deed created merely a passive trust so far as the plaintiffs' estate was concerned, and a legal estate vested in each as he came into being, the same as though no trustee had been named. Secs. 2073–2075, Stats. 1898; *Tyson v. Tyson,* 96 Wis. 59, 67; *Sullivan v. Bruhling,* 66 Wis. 472; *Verdin v. Slocum,* 71 N. Y. 345. Assuming that certain active trusts, during the lives of Julia and Frederick S., were created, they would not affect the naked passive trust as to the remainder in fee in the plaintiffs, nor clothe it with any validity. Sec. 2087, Stats. 1898; *Baker v. Estate of McLeod,* 79 Wis. 534; *Burnham v. Burnham,* 79 Wis. 557; *Tyson v. Tyson,* 96 Wis. 59, 66; *Stevenson v. Lesley,* 70 N. Y. 512, 516; *Embury v. Sheldon,* 68 N. Y. 227; *Losey v. Stanley,* 147 N. Y. 560. Since, as to the plaintiffs at least, the attempted trust was passive and void, Dr. Dyer was not their trustee, and the judgment of April 25, 1861, was void as against them and did not affect their title. *McArthur v. Scott,* 113 U. S. 340; *Chaffin v. Hull,* 49 Fed. Rep. 524; *Johnson v. Jacob,* 11 Bush. 646; *Monarque v. Monarque,* 80 N. Y. 320; *Ruggles v. Tyson,* 104 Wis. 500.

*E. E. Mills,* attorney, and *A. L. Sanborn* and *J. B. Simmons,* of counsel, for respondent, argued, among other things, that Dr. Dyer was not only vested with the fee simple title, but was trustee for the after-born children and had the right to represent them in the lawsuit which determined the validity of the deed. *Bennett v. Garlock,* 79 N. Y. 303, 317; *Robinson v. Pierce,* 118 Ala. 273; *S. C.* 45 L. R. A. 66, 72; *Ruggles v. Tyson,* 104 Wis. 500; Van Fleet, Former Adjudication, § 493 and cases cited; *Temple v. Scott,* 143 Ill. 290; *Briscoe v. Perkins,* 1 Ves. & B. 485; *Vanderheyden v. Crandall,* 2 Denio, 9; *Schiffman v. Schmidt,* 154 Mo. 204; *In re Krebs's Estate,* 184 Pa. St. 222; *Schley v. Brown,* 70 Ga. 64; *Stevens v. Melcher,* 6 N. Y. Supp. 811; *Hooberry v. Harding,* 10 Lea (Tenn.), 392; *Hart v. Bayliss,* 97 Tenn. 72; *Carney v. Byron,* 19 R. I. 283; *Simmons v. Richardson,* 107 Ala. 697; *Appeal of Clarke,* 70 Conn. 195; *Walton v. Ketchum,* 147 Mo. 209. Both life tenant and trustee being parties, the decree barred after-born children. *Taltarum's Case,* Year Book, 12 Edw. IV, 19, A. D. 1472; 1 Washb. Real Prop. (5th ed.) *70; Digby, Hist. Law Real Prop. 252; *Giffard v. Hort,* 1 Sch. & Lef. 386; *Townshend v. Frommer,* 125 N. Y. 446; *Kent v. Church of St. Michael,* 136 N. Y. 10; *Campbell v. Watson,* 8 Ohio, 499; *U. S. Trust Co. v. Roche,* 116 N. Y. 120; Van Fleet, Former Adjudication, § 491; *Clyburn v. Reynolds,* 31 S. C. 91; *Baylor's Lessee v. Dejarnette,* 13 Grat. 152; *Temple v. Scott,* 143 Ill. 290; *Miller v. Foster,* 76 Tex. 479; *Franklin Savings Bank v. Taylor,* 53 Fed. Rep. 854.

CASSODAY, C. J. It is contended by counsel for the appellants that, so far as the estate of the plaintiffs was concerned, the trust deed created a mere passive trust, and that the legal estate vested in each of them, respectively, as he came into being, the same as though no trustee had been named, and hence that the case comes directly within the terms of the statute which declares that

"Every person who, by virtue of any grant, assignment or devise, now is or hereafter shall be entitled to the actual possession of lands and the receipt of the rents and profits thereof, in law or in* equity, shall be deemed to have a legal estate therein of the same quality and duration and subject to the same conditions as his beneficial interest." Sec. 2073, Stats. 1898 (the same as sec. 3, ch. 57, R. S. 1849).

But the statute further provides that

" The last preceding section shall not divest the estate of any trustees in any existing trust where the title of such trustees is not *merely nominal*, but is *connected with some power of actual disposition or management* in relation to the lands which are the subject of the trust." Sec. 2074, Stats. 1898 (the same as sec. 4, ch. 57, R. S. 1849).

Passive trusts are abolished by the statute which declares that

"Every disposition of lands, whether by deed or devise, hereafter made, except as otherwise provided in these statutes, shall be directly to the person in whom the right to the possession and the profits shall be intended to be vested and not to any other, to the use of or in trust for such person, and if made to one or more persons in trust for or to the use of another no estate or interest, legal or equitable, shall vest in the trustee." Sec. 2075, Stats. 1898 (the same as sec. 5, ch. 57, R. S. 1849).

Under these statutes, this court has held that

" A conveyance of land to one person in trust for and to the use and benefit of another, without any further expression of the nature and purposes of the trust, vests the absolute legal title in the *cestui que trust* named." *Sullivan v. Bruhling*, 66 Wis. 472.

To the same effect, *Hannig v. Mueller*, 82 Wis. 235, 243; *Tyson v. Tyson*, 96 Wis. 59; *Ruth v. Oberbrunner*, 40 Wis. 238.

But we are clearly of the opinion that the trust deed to Dr. Dyer did not create, nor attempt to create, a mere passive trust, within the meaning of the statutes cited and the decisions of this court. *White v. Fitzgerald*, 19 Wis. 480; *Goodrich v. Milwaukee*, 24 Wis. 422; *Smith v. Ford*, 48 Wis. 133; *Webber v. Webber*, 108 Wis. 626. As indicated in the

statement of facts, Dr. Dyer was to have and retain the possession of the lands during the whole continuance of the trust. He was to receive the rents and profits and the proceeds of any sales made by him, and to use the same in the payment of debts, and then he was " *to permit* " the widow to receive the rents and profits to her use for life; she to pay therefrom to Frederick S., yearly, such sum as she might deem proper. In case the widow died before Frederick S., then Dr. Dyer was to pay to him from such rents and profits so much as he might deem proper until he should become twenty-five years of age, and then he was to receive the whole rents and profits to his own use during his life. In case Frederick S. survived the widow, and should have issue, then Dr. Dyer was to convey such lands to such issue, for their use and the use of their heirs, forever; but in case he died without issue, then such lands were to be disposed of as therein stated. By the express terms of the deed, Dr. Dyer had full "right, power, and authority to sell and convey any and every part " of the premises in case of "necessity arising out of the situation or wants " of the widow or Frederick S., or at any time " upon the joint wish " of the two, " with the consent of the trustee "; and in that event Dr. Dyer was to invest the proceeds of such sale "in such safe manner as the trustee " deemed " proper for the use of the parties in interest." And in case Origen Perkins survived his wife or his son, then the trustee was to convey the premises to such person or persons, and in such manner, as Origen should direct by his will or otherwise.

Thus it appears that Dr. Dyer, as such trustee, was expressly given the " power of actual disposition," and also the power of actual " management " and control of the lands which were " the subject of the trust," and hence it was in a double sense an active trust, as defined in one of the sections of the statute quoted. Such deed of trust manifestly created an "express trust," within the meaning of the stat-

ute (subd. 1–3, 5, sec. 2081, Stats. 1898; the same as sec. 11, ch. 57, R. S. 1849). *White v. Fitzgerald, supra; Goodrich v. Milwaukee, supra; Smith v. Ford, supra; Webber v. Webber, supra.* Another section of the statute expressly provides that

"Every express trust, valid as such in its creation, except as herein otherwise provided, *shall vest the whole estate in the trustees,* subject only to the execution of the trust; and the person for whose benefit the trust was created shall take no estate or interest in the lands, but may enforce the performance of the trust." Sec. 2086, Stats. 1898 (the same as sec. 16, ch. 57, R. S. 1849.)

The next section relates to the power of the person creating the trust over the subject of the trust "in the event of the failure or determination of the trust," and his power to grant or devise "such lands subject to the execution of the trust." Sec. 2087, Stats. 1898 (the same as sec. 17, ch. 57, R. S. 1849). But here it was only in case the person so creating the trust survived his wife or his son that he reserved to himself any right to direct Dr. "*Dyer or his heirs*" "to convey the premises to such person or persons and in such manner as" he (Origen Perkins) should "direct by his will or otherwise." Unless he survived his wife or his son, he thereby deprived himself of all control over the property. In case he did so survive, then not only Dr. Dyer, but in case of his death then "his heirs," were to be subject to such direction. This clearly contemplates the possibility of the title to the lands passing by descent from Dr. Dyer to "his heirs." In the event that Origen Perkins should survive both his wife and his son, and his son should leave issue, then neither Dr. Dyer nor his heirs could convey as directed by the trust deed until it should be ascertained whether Origen had or would give other direction "by his will or otherwise;" and that might not be known until the death of Origen.

Such features of the trust deed indicate the character of

the trust, and they are not weakened by the fact that Origen Perkins did not survive his wife or his son, but died three years after the creation of the trust. So the widow died about two years prior to the commencement of the action against Dr. Dyer. That suit was commenced and terminated in a judgment five years prior to the birth of any of the plaintiffs. Thus it appears that for seven years no living person had any right, title, or interest in any of the lands in question, either legal or equitable, except Dr. Dyer and Frederick S. Perkins. During that period the suit was commenced and terminated. During that period the whole estate was vested in Dr. Dyer, "subject only to the execution of the trust," with power and authority to sell and convey as indicated, and also with power and authority to manage and control as mentioned. During that period Frederick S. was only to receive so much of the rents and profits as Dr. Dyer might deem proper to give him until he should arrive at the age of twenty-five years, and thereafter he was to "receive the whole" of such "rents and profits of said lands to his use during his life." Manifestly, Dr. Dyer represented, and had the legal right to represent, such issue of Frederick S. as might subsequently be born, including the plaintiffs.

In a case decided by that very able equity jurist, Lord High Chancellor HARDWICKE, more than 160 years ago, it was among other things, said and held that,

"If there are ever so many contingent limitations of a trust, it is an established rule that it is sufficient to bring the trustees before the court, together with him in whom the first remainder of the inheritance is vested, and all that may come after will be bound by the decree, though not *in esse*, unless there be fraud and collusion between the trustees and the first person in whom a remainder of inheritance is vested." *Hopkins v. Hopkins*, 1 Atk. 581, 590.

That was expressly sanctioned in a later case. *Marquis Cholmondeley v. Lord Clinton*, 2 Jac. & W. 1, 133. See, also,

*Biscoe v. Perkins,* 1 Ves. & B. 485; *Collier v. Walters,* L. R. 17 Eq. 252; *United States T. Co. v. Roche,* 116 N. Y. 120; *Campbell v. Watson,* 8 Ohio, 498; *Baylor's Lessee v. Dejarnette,* 13 Grat. 152. Thus it is held in Georgia that

" When the person who is to take the remainder is not ascertained, and the remainder is contingent, it is sufficient to have before the court the trustees to support the contingent remainder, and the persons *in esse* having title to the vested estates." *Schley v. Brown,* 70 Ga. 64.

So it has been held in New York that

" Where an estate is vested in persons living, subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate, for all purposes of any litigation in reference thereto, and affecting the jurisdiction of the courts to deal with the same, represent the whole estate, and stand not only for themselves but also for the persons unborn." *Kent v. Church of St. Michael,* 136 N. Y. 10.

So it has been held in Illinois that

" On creditors' bill to set aside a deed of land to a trustee in trust to collect and pay rents to a married woman during her life, and at her death to convey to the children she might leave surviving, on the ground that such deed is in fraud of creditors of the grantor, the children of such married woman are not necessary parties. In such case the trustee represents the contingent interest of the children, and a decree setting aside the deed of trust is binding on them, the same as if made parties." *Temple v. Scott,* 143 Ill. 290.

In another case in the same volume it was held that

" Where land is devised to trustees in trust to collect the rents, etc., and pay the same to a daughter of the testator during her life, and at her death to convey the same to her issue in such manner and shares as she may direct by will, and, in the event she leaves no issue, then to certain other persons at her death, the legal title will not vest in her children, and they will not become necessary parties to a bill by a third person to have a part of the land sold, but it will be sufficient to make such trustees parties." *Green v. Grant,* 143 Ill. 62.

So it has been held in that state that

"The general rule that a decree is not binding on one not made a party to the suit is subject to certain well-recognized exceptions. Thus, when a party is before the court by representation, and in such a way that his interest must be deemed to have been as fully and effectually presented and protected as it would have been if he had been personally present, his rights will be concluded by the decree." *McCampbell v. Mason,* 151 Ill. 500.

The case at bar is clearly distinguishable from those where there is no uncertainty as to the persons in whom the remainder vests. *Patton v. Ludington,* 103 Wis. 630. Of course the case is distinguishable from those where the trustee has no right of management or control, no right of possession, no power of disposition, or where there is no trustee having right or authority to represent such contingent interests. Upon such grounds, some of the cases cited by counsel may be readily distinguished.

We must hold that the plaintiffs herein are bound by the judgment of April 25, 1861. This conclusion makes it unnecessary to consider the other question argued by counsel.

*By the Court.*— The judgment of the circuit court is affirmed.