ESTATE OF EVANS: FIRST NATIONAL BANK OF MADISON, Trustee, Appellant, vs. EVENSON, Guardian *ad litem,* and others, Respondents.*

*December 6, 1956—January 7, 1957.*

* Motion for rehearing denied, with $25 costs, on March 5, 1957.

For the appellant there were briefs by *Hill, Miller & Hill* of Baraboo, attorneys, and *Spohn, Ross, Stevens, Lamb & Pick* of Madison of counsel, and oral argument by *Myron Stevens* and *James H. Hill.*

For respondents Walter Draper, Margaret Anne Draper, and Susan K. Draper there was a brief and oral argument by *William G. Evenson* of Baraboo, guardian *ad litem.*

For the respondent Thomas E. Evans there was a brief and oral argument by *Harlan W. Kelley* of Baraboo, guardian *ad litem.*

FAIRCHILD, C. J. Before taking up the question of whether or not the judgment entered April 17, 1942, is *res adjudicata* as to grandchildren born after the date of death of the testator, it seems well to pass upon the nature and inclusiveness of the bequest. If the gift grant in article Third is to a class, and that class is so fixed by the terms of the bequest that there may be an interval of time during which the class may increase, then the gift is one which vests in the existing number of the class and such other persons as thereafter become members of the class. That interval continues to the point of time or event which is specified and certain. The gift we are considering is to "my grandchildren," and because of the absence of an alternative gift over or reversion in favor of the testator's heirs, it bespeaks an intention of a vested gift. The grandchildren living at the death of the testator are members of the class, but the class is subject to a change by addition of after-born grandchildren who came into being before the coming of the event which closes forever the membership in the class.

The time fixed for closing the class is set in the bequest: "After each grandchild reaches the age of thirty years, he is to be paid his full share of the principal sum of this bequest together with the interest which has accumulated thereon." This controls the increase in membership in the class. The time of the distribution of the corpus settles the question of maximum membership. In the absence of words in the will indicating a contrary intent, a testator would naturally desire to include all grandchildren born at the time of the distribution of the corpus. In Simes, Law of Future Interests (2d ed.), we find the following recognition of rules of construction:

". . . the maximum membership in the class is determined when the time for distribution has arrived. The class may increase until that time and persons born thereafter are excluded." p. 69, sec. 634.

". . . the 'time for distribution' arrived when the first member of the class attained the designated age." p. 89, sec. 644.

In 5 American Law of Property, the following rules are recognized:

When a class gift is postponed until the occurrence of some event, such as the attainment of age twenty-one, the class does not normally close until the first member of the class attains the designated age. p. 372, sec. 22.44.

"It must be kept in mind that the probable desire of the average transferor, when he describes his transferees by a group designation, is to benefit as many persons who comply with the description as he can, without at the same time causing too much inconvenience." p. 364, sec. 22.43.

The gift may be so made that the class may either increase or decrease after the death of the testator until the arrival of the fixed point of time or the happening of the specified event. It may be so worded that there may be an interval of time during which the class may increase but during which it cannot decrease. The most common example of this kind of gift is one which vests in the existing members of a class and in such other persons as thereafter become members of the class up to the point of time or event which is specified. 3 Page, Wills (lifetime ed.), p. 216, sec. 1052. It is considered that the three grandchildren born after the death of the testator and before the distribution of the corpus are members of the class and inherit as such.

The question of *res adjudicata* we conclude to be without merit. In his will the deceased made a gift to a class, to wit: His grandchildren. As previously construed herein, such class might increase in membership after his death until the arrival of a fixed point of time to be determined as of the date when the first grandchild reaches the age of thirty. The bequest vested in the existing members of the class and in such other persons as thereafter became members, up until such a point of time when the first distribution of the corpus

was directed to be made. At the time the will was admitted to probate, there were then in existence six grandchildren who were members of the class, with the possibility of an increase in the membership before the point of distribution would be reached.

The appellant contends that the final decree entered in the estate construed the bequest as not permitting the opening up of the class after the death of the testator to admit after-born grandchildren, and that such determination is *res adjudicata* as to the rights of all after-born grandchildren. The petition propounding the will for probate was made January 27, 1940. In those proceedings it was ordered that notice of hearing be published in the Weekly Home News, a newspaper published in Spring Green, Wisconsin. The publication was made. Prior to the admission of the will to probate, the court appointed a guardian *ad litem,* reciting that the six grandchildren were minors interested in said estate, and included therein the words "guardian *ad litem* for said minors and for all unknown minors and incompetents for the sole purpose of appearing for them and taking care of their interests in the proceedings in the said matter." On February 7th, the will was admitted to probate. On March 17th, the letters testamentary were issued, and the inventory properly filed. The final account and petition for settlement were dated August 2, 1941; and on August 6th of that year the court directed that the hearing be held on the final account, and that notice thereof be given by publication in the Weekly Home News. In the order determining the inheritance tax, one sixth of the $50,000 trust estate was taxed to each of the grandchildren who survived the decedent. On April 17, 1942, final judgment was entered, and in that judgment the court found that the deceased was survived by the widow and his children and by the six grandchildren. The First National Bank of Madison was appointed trustee. The trust estate created by the bequest, and referred to in the final judgment, was assigned in such final decree as follows:

"To Maxine A. Perry, Barbara A. Perry, Evan F. Evans, Thomas E. Evans, Keith A. Pope, and Wayne E. Pope, grandchildren, the sum of Fifty Thousand ($50,000), less such amounts as have heretofore been paid by said executor for inheritance tax upon the distributive shares of each such grandchild, . . . the same to be held in trust by the First National Bank of Madison, Wisconsin, subject to the terms and conditions as set forth in the will of said deceased as follows:

"That the income shall be allowed to accumulate until said grandchildren shall respectively become of legal age.

"That when each such grandchild becomes of legal age he shall receive his proportionate share of such accumulated income, and thereafter all income on his proportionate share shall be paid to him annually until he reaches the age of thirty years.

"That when each such grandchild becomes thirty years of age he shall be paid his full share of the principal of said trust, together with all interest accumulated thereon."

Thereafter, commencing as of the date that the first grandchild became of age, the trustee has paid interest to the grandchild as provided in the judgment; and on March 26, 1955, when Maxine A. Perry (Tesia), the oldest of such grandchildren, attained the age of thirty years, the trustee paid to her one sixth of the corpus of the trust and was discharged as trustee to her.

Three children have been born to Alice Pope Draper, one of the children of the deceased, since the death of the deceased, to wit: Walter Draper, born on November 1, 1945; Margaret Anne Draper, born on February 13, 1951; and Susan K. Draper, born on June 30, 1952.

On August 9, 1955, the trustee having been advised of the birth of such subsequently born grandchildren, and being concerned as to whether they might possibly have an interest in such trust, petitioned the court to construe the judgment and the will of the deceased to so determine. The appellant trustee urges that the judgment entered in 1942 is *res adjudicata* as to all persons, including those born after the death

of the decedent. The guardian *ad litem,* appearing for the after-born grandchildren, urges that they have never had their day in court, that from the time for petition of the probate of the will of John C. Evans, on January 27, 1940, and through the entire proceedings in the county court there has never been anyone or someone representing these after-born children, who are plainly members of the class to which the $50,000 was bequeathed. Their interests had never been given consideration until the appointment of a guardian for them on August 15, 1955, which occurred in the instant proceedings.

The county court judgment, it is considered, is not *res adjudicata* as to these after-born grandchildren. While it must be conceded that all notice which could have been given during the probate proceedings was, in fact, given, these after-born grandchildren who acquired an interest in the trust immediately upon birth, and whose rights are affected by the judgment and subsequent proceedings, never had representation in court, and consequently no opportunity to be heard, and the court never acquired jurisdiction over their interests or over them so as to exclude them from membership in the class provided for in the will. This being so, these minors, having had no one to represent them, whose interests were not adverse, cannot be precluded from membership in the class by a judgment not binding upon them. When, after the rendition of a judgment, subsequent events occur creating a new legal situation or altering the legal rights or relations of the parties, the judgment may be precluded from operating as an estoppel. In such case, the earlier adjudication is not permitted to bar a new action to vindicate rights subsequently acquired. 30 Am. Jur., Judgments, p. 943, sec. 206.

Our attention is called to the case of *Bresee v. Stiles,* 22 Wis. *120, which holds that notice is necessary to make a judgment final and effective as against clearly established rights. In *Ruth v. Oberbrunner,* 40 Wis. 238, we find, at page 269, the following statement of the court: "It is a

fundamental principle in the administration of justice, that no one shall be deprived of his property without his day in court, and having an opportunity to be heard." The fact that, in those cases just referred to, the minors were in being does not alter the rule to the extent of taking away property from those to whom it was bequeathed when no consideration was given to their rights at the time of the entering of the preceding judgment. And, in any event, one of these children was in existence, and actual notice could have been given before the first accumulated interest was paid out, when Maxine Perry Tesia became twenty-one, and when each successive grandchild became twenty-one, and before the first sixth of the corpus was allotted and paid at the time Maxine Perry Tesia became thirty.

The trustee has asked for instructions, as it may. We agree with the guardian *ad litem* for the after-born grandchildren that, there having been no one to appeal from the final judgment in the Evans matter, it became incumbent upon the trustee to ascertain what births of additional grandchildren, if any, had intervened between the date of judgment and the date of the first payment of accumulated interest, and what were their rights, if any. The trustee accepted the responsibility of holding the trust, subject to the terms and conditions as set forth in the will of said deceased, and by reference that will and its terms were incorporated in the judgment. *Will of Inbusch,* 193 Wis. 10, 212 N. W. 634.

There is nothing in the record which would permit a holding that there were other persons so situated as to be capable of and responsible for a representation of the interests of these later-born grandchildren. It would seem that there must be something appearing in the record which would indicate that due consideration was given to the rights which vested in the class to which these after-born grandchildren belonged, if such after-born persons are to be bound. The petition addressed to the court asks for the construction of the judgment and the will of the deceased and of the rights of

these grandchildren who were born after the probate proceedings were concluded and who were not mentioned therein. Because these respondents, through no fault of theirs, have never had their day in court, the final decree now under consideration is not *res adjudicata* as to them.

Inasmuch as and because the trial court erroneously held that membership in the class opened up each time a new grandchild is born, until such time as the entire trust corpus was distributed, the order must be modified to correct this error.

We do not continue a discussion of other questions not necessary for a determination of the material issues.

*By the Court.*—Order modified so as to provide that membership in the class permanently closed when the oldest grandchild arrived at the age of thirty years and, as so modified, it is affirmed. Cause remanded for further proceedings according to law.

The following opinion was filed on March 5, 1957:

PER CURIAM (*on motion for rehearing*). Nothing has been presented in the briefs in support of .the motion for rehearing on the question of the construction of the class bequest to the grandchildren which we deem requires any alteration in our original opinion.

However, as to the issue of the original final decree being *res adjudicata* as to the unborn grandchildren, the contention is advanced that we did not give due consideration to the fact that probate proceedings are *in rem* and not *in personam*. However, as pointed out by the United States supreme court in *Mullane v. Central Hanover B. & T. Co.* 339 U. S. 306, 70 Sup. Ct. 652, 94 L. Ed. 865, the due-process requirements of the Fourteenth amendment, as regards notice and hearing, do not depend upon a distinction between actions *in rem* and those *in personam,* however useful such distinction may be on other issues. By analogy we consider such distinction to be immaterial as to whether

strangers to a proceeding are concluded by a particular judgment, except that there probably is more latitude extended in finding that there has been class or virtual representation of persons not having received notice of the proceeding in an action *in rem* than one *in personam.*

As a general rule a judgment *in rem* cannot deprive any person of personal or property rights where he was neither made a party to the proceeding, nor given notice or opportunity to be heard. 50 C. J. S., Judgments, pp. 554, 555, sec. 910, 3. A recognized exception to such rule is where there has been virtual or class representation of such person.

This brings us to the contention that there was virtual representation of the three unborn grandchildren in the instant probate proceeding as a result of the appointment of the guardian *ad litem* for all the grandchildren and his participation in the proceeding. However, there can be no binding effect of the judgment entered upon persons not parties to the proceeding upon the theory of virtual representation, if the interests of such persons are antagonistic to those of the party, or parties, whom it is contended represented the interests of such strangers to the proceeding. 30 Am. Jur., Judgments, p. 963, sec. 228.

By way of illustration, if in the instant probate proceeding an issue had been raised that an adopted child of a daughter of the testator should be included as a member of the class of grandchildren, and the court in the final decree had included such adopted child as being a member of the class, the three after-born grandchildren would be concluded thereby. This is because the guardian *ad litem* for the grandchildren was a party to the proceeding and there would have been no antagonistic position between the living and the after-born grandchildren. It would have been to the mutual interest of all to have excluded the adopted child from the class.

However, as pointed out in the original opinion, the interests of the after-born grandchildren were antagonistic to those of the living grandchildren as to whether the former

should be included in the class. This prevented there being any virtual representation of the after-born grandchildren by the guardian *ad litem* so as to make the final decree *res adjudicata* as to such after-born grandchildren.

On this issue of virtual representation the appellant trustee places great reliance upon *Ruggles v. Tyson,* 104 Wis. 500, 79 N. W. 766, 81 N. W. 367. In that case the court considered the power of a county court to direct a sale of real estate held in trust so as to convey merchantable title as against interests of contingent remaindermen, including persons not born. It was held that there was representation of the interests of the unborn remaindermen by the life tenant and the living remaindermen which made the judgment binding on all. However, there was no antagonism there between the various remaindermen on the issue of the sale, it being to the interests of all to obtain as good a sales price as possible.

*Perkins v. Burlington L. & I. Co.* 112 Wis. 509, 88 N. W. 648, is also distinguishable from the instant case. It was there held that the trustee of an active trust represents unborn contingent remaindermen beneficiaries in a proceeding where the first remaindermen, in an adversary proceeding against the trustee, sought to, and was successful, in wresting the land constituting the trust as from the trustee freed from the trust. Here again there was no antagonistic interest between the trustee and the contingent remaindermen as to the issue being litigated. There was no showing of collusion between the trustee and the first remainderman who had instituted the suit, and it must be presumed that the trustee properly and diligently defended the action.

Our attention has been called to the provisions of sec. 323.10, Stats., promulgated by this court under its rule-making power, which section became effective September 1, 1956. This section reads as follows:

"Possible persons unborn or presently unascertainable, having successor or contingent interests in a trust estate as beneficiaries, heirs, or next of kin, if not already represented by a fiduciary, may be represented in an accounting by a guardian *ad litem* if the court deems it necessary. The court may dispense with or terminate the appointment of a guardian *ad litem* for a person having a successor or contingent interest who is legally incompetent, unborn, or presently unascertainable, if there is a living person, *sui juris,* having in the judge's opinion a substantially identical interest, who is represented by counsel and whose interest is not adverse."

While such section was not in effect when any of the proceedings in the instant case took place in the trial court, we fail to see any conflict between its provisions and our holding herein.

Complaint is also made that we failed to consider sec. 330.52, Stats. The legislative history of this statute discloses that it was enacted in 1951 because of the United States supreme court's decision in the *Mullane Case.* Its purpose was to establish a one-year statute of limitations as to any action which is instituted to set aside a judgment or order entered before June 10, 1951, where the cause of action is grounded upon the inadequacy of the notice given, even though such notice complied with all statutory requirements existing as of the time the same was given. Such statute has no application whatsoever to the instant case.

We have also been requested by appellant's brief on rehearing to delete the finding of fact of the trial court that Maxine Perry Tesia (the oldest grandchild) should have received distribution of a one-ninth interest, instead of a one-sixth interest, in the corpus of the trust upon arriving at the age of thirty years. Such finding is in accord with our own determination of the issues on appeal, and we can perceive no good reason for deleting it.

The motion for rehearing is denied with $25 costs.