PIETSCH and another, Trustees, Appellants, vs. MARSHALL
& ILSLEY BANK, Respondent.

*October 24—December 5, 1916.*

*Trusts and trustees: Intention to create trust: Testamentary instrument: Active trust: Validity.*

1. A written instrument by which the grantor transferred and conveyed to designated trustees, and to the survivor of them, all her property, real and personal, "in trust, nevertheless, upon the express trusts following;" which gave to such trustees authority to collect all rents, insurance, mortgages, interest, and other property of the grantor, to convert all into money, and to invest and reinvest the same; which provided that the net income of the property should be paid over to the grantor during her life, and that twice in each year the "trustees shall render an accounting of their stewardship" to her; which recited that the grantor had also delivered in escrow a deed of her real estate, to be delivered after her death to the trustees, who were then to sell the same and distribute the proceeds "according to the trust herein provided for;" and which then directed the trustees, after payment of her debts and funeral expenses, to pay certain specific sums to persons named and to distribute all the residue of her estate in equal shares among her six children,—is *held* to have created a valid, active trust within the meaning of sec. 2074, Stats., for purposes authorized by sub. (5), sec. 2081, and not to have been intended merely as a testamentary disposition of the property, although some of the phraseology of the instrument might indicate the latter intention.

[2. Whether, under the provisions of such instrument, the real estate is to be deemed personal estate for the purposes of the trust, not determined.]

APPEAL from an order of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Reversed.*

This is an action to recover the balance of bank deposits from the defendant, which it is alleged was assigned to plaintiffs by the execution of the following written instrument, executed by one Mathilde Pietsch on the 31st day of July, 1915:

"Whereas, Mathilde Pietsch, of sound mind and memory, is aged and is desirous of keeping her property intact until

her death, and wishes to be relieved from the cares and responsibilities connected therewith, and also is desirous of making disposal thereof upon her death.    For the purpose of carrying out her intentions, said Mathilde Pietsch *hereby sells, assigns, sets over, grants and conveys to her daughter Doretta Pietsch, and to her son Ferdinand Pietsch, and to the survivor of them, all her property, real and personal, in trust, nevertheless, upon the express trusts following,* and hereby revoking all former disposals of a testamentary character, or otherwise; *and the said Doretta Pietsch and Ferdinand Pietsch hereby accept such property upon the trusts as herein expressed:*

"1. Power and authority is hereby given to the trustees, or to the survivor of them, *to gather in, collect, sue for, all rents, insurance, mortgages, interest and other property of every kind and nature, of the said Mathilde Pietsch, and convert all into money and to invest and reinvest same in securities as said trustees shall deem meet and proper.*

"2. For and during her natural life, said Mathilde Pietsch *is to receive the use and income of said property,* the net income of which is to be paid over to said Mathilde Pietsch upon her request, and at such times as she may desire.

"3. On the first day of January and July of each year, trustees shall render an accounting of their stewardship to said Mathilde Pietsch.

"4. There is also assigned to said trustees upon the trusts herein expressed, life insurance policy No. 73430, dated July 22, 1867, in the Connecticut Mutual Life Insurance Company of Hartford, Connecticut, for twenty-two hundred dollars ($2,200), subject to a note against it, held by said company, and *there is also assigned to said trustees all moneys which said Mathilde Pietsch may have in banks.*

"5. Said Mathilde Pietsch has this day also delivered in escrow, to be held by Frederick M. Wilmanns until her death, and then to be delivered to her trustees, a deed of all her real estate . . . [description of real estate omitted], subject to the lawful incumbrance thereon, and in which said deed the trustees are the grantees, and which said real estate the trustees, after the death of said Mathilde Pietsch, are to sell and dispose of at such price and upon such terms and conditions as they may deem just and proper, and distribute the proceeds according to the trust herein provided for.

"6. Out of the personal property or the proceeds thereof coming to the hands of said trustees, and all other personal property which said Mathilde Pietsch may have an interest in at the time of her death, said trustees are ordered and directed to pay as soon as may·be convenient, after payment of said Mathilde Pietsch's just debts and funeral expenses, as follows: . . . [small gifts omitted—(a) to (e).]

"7. All the rest, residue and remainder of my estate, I order and direct my said trustees, or the survivor of them, to distribute same in equal shares among my six children, *Doretta Pietsch, Ferdinand Pietsch,* Mathilde Mayer, *née* Pietsch, Lena Plats, *née* Pietsch, Albert Pietsch and Hugo Pietsch, or their heirs. For the purpose of converting my property into money and to make distribution as aforesaid, I authorize and empower my trustees to take whatever steps they may deem necessary to accomplish the purpose. It being distinctly understood that no distribution is to be made until after my death. Should any question arise in the execution of the trust, power and discretion is given to my trustees, and to the survivor of them, to act as they think best, confident that my trustees will act for the best interest of all concerned.

"In witness whereof, the said Mathilde Pietsch has hereunto set her hand and seal this 31st day of July, 1915, and the said *Doretta Pietsch* and *Ferdinand Pietsch* have also hereunto set their hands and seals on the same day, and accept the trusts as created and declared herein.

"MATHILDE PIETSCH.    (Seal.)

[Attestation clause]    "DORETTA PIETSCH.    (Seal.)

"FERDINAND PIETSCH.    (Seal.) "

The foregoing instrument was witnessed and also acknowledged by Mathilde Pietsch, *Doretta Pietsch,* and *Ferdinand Pietsch* before a notary. An addendum to the trust instrument was executed by Mathilde Pietsch on the same day wherein she enumerated a few more small gifts. This addendum was also signed by *Doretta Pietsch* and *Ferdinand Pietsch.*

Mathilde Pietsch died on March 1, 1916. At the time she executed the foregoing instrument she had a savings account

with the defendant, and after crediting the interest up to
January 1, 1916, the account shows a balance of $2,432.53,
and on the checking account a balance of $16.17.    The
plaintiffs have repeatedly demanded payment of these sums
from the defendant, but defendant has and still does refuse
to pay the same to the plaintiffs.   It was stipulated in open
court that plaintiffs gave defendant proper notice of the as-
signment of the bank accounts under this writing before the
commencement of this action.

The defendant demurred to the complaint and the circuit
court sustained such demurrer.   This is an appeal from the
order sustaining the demurrer.

*Moritz Wittig,* for the appellants.

For the respondent there was a brief by *Churchill, Ben-
nett & Churchill,* and oral argument by *W. H. Churchill.*

SIEBECKER, J.   The primary question presented by the
demurrer is, What is the legal effect of this written instru-
ment?   In ascertaining the answer it is to be presumed that
the terms of the instrument were employed to effect a pur-
pose the law sanctions concerning a transfer of the property
of Mathilde Pietsch.   Many of the phrases used in connec-
tion with the effective parts of the instrument are probably
the product of the scrivener's habit of employing ancient
and superfluous terminology in legal writings and others are
manifestly the mere expression of the motives of the maker
of the instrument.   These parts of the writing, however, are
not out of harmony with the provisions of the writing which
evince the intent and purpose of the maker.   The essential
and effective parts of the instrument are that Mathilde
Pietsch thereby "sells, assigns, sets over, grants and conveys
to her daughter *Doretta Pietsch,* and to her son *Ferdinand
Pietsch,* and to the survivor of them, all her property, real
and personal, in trust, nevertheless, upon the express trusts
following, . . ." and the daughter and son "accept such

property upon the trusts as herein expressed." The instrument provides that "power and authority is hereby given to the trustees, or to the survivor of them, to gather in, collect, sue for, all rents, insurance, mortgages, interest and other property . . ." belonging to her and "convert all into money and to invest and reinvest same in securities as said trustees shall deem meet and proper." By other provisions the grantor is to receive the income of this property during her life, and the trustees are to pay her the net income thereof at such times as she demands and make a semi-annual "accounting of their stewardship" to her. Assignments of a life insurance policy and of her money in banks are specifically made to such trustees as such, and at the time of executing this instrument she executed a deed conveying to the trustees in trust all her real estate, which was delivered to one Wilmanns to be held by him "until her death, and then to be delivered to her trustees, . . ." and the trustees are directed after her death "to sell and dispose" thereof as they deem fit and proper "and distribute the proceeds according to the trust herein provided for." The instrument then directs "the trustees," after payment of her debts and funeral expenses, to pay to the persons named in the instrument certain specific sums, and the rest and residue of the estate they are directed to distribute in equal shares among her six children.

It is well established that a trust may be created by an instrument in writing subscribed by the creators of the trust, if the intention is clear to create a trust for the purposes authorized in the law. The purposes as expressed in this instrument are reasonably clear to the effect that the grantor of the property did presently transfer and convey all her real and personal property to her daughter and son as trustees. She also supplemented such transfer by the execution of a deed contemporaneously therewith which she delivered in escrow. The result of this transfer was that the designated trustees took title and possession of the estate and became

vested with the authority to manage it, to collect the rents, interests, and profits thereof and pay her the net proceeds during her life, and then to execute the trust by paying and distributing the estate pursuant to the express provisions of the instrument. The statute, sec. 2081, Stats. 1915, provides:

"Express trusts may be created for any or either of, the following purposes: . . .

"(5) For the beneficial interests of any person or persons, when such trust is fully expressed and clearly defined upon the face of the instrument creating it, subject to the limitations as to time and the exceptions thereto relating to literary and charitable corporations prescribed in this title."

We are of the opinion that the provisions of this instrument fully express and clearly define a trust, in that it constitutes a conveyance of the trustor's real and personal property to the designated trustees for the purposes of having the rents and income thereof paid to her during life, and at her death the *corpus* of the trust estate is to go to the persons she has selected as her beneficiaries. These are legitimate objects within the law of trusts in this state. Such conveyances of real estate in trust are valid if the trust is an active one within the contemplation of sec. 2074, Stats. We need not consider whether or not, under the provisions of this trust instrument, the real estate is to be deemed personal estate for the purposes of this trust, because it is manifest that such real property can properly be made a part of an active trust. That the trust is an active one is shown by the facts that the trustees are charged with the active duties of managing all the property of the trust, to collect all rents, interests, and profits thereof and to invest and reinvest the same and pay out of the net proceeds the sums due to the trustor under the conditions of the writing creating it. These are very important and active continuing duties during the existence of the trust. *Goodrich v. Milwaukee,* 24 Wis. 422;

*Perkins v. Burlington L. & I. Co.* 112 Wis. 509, 88 N. W. 648.    In *Schumacher v. Draeger,* 137 Wis. 618, 119 N. W. 305, a trust of this nature was recognized as within the statutes, but the trust in that case failed because it came within the provision of sec. 2073, Stats.    Here the possession of the *corpus* of the estate and the receipts, rents, and profits thereof vest in the trustees in trust for the benefit of the trustor during her life and thereafter to hold it in trust for the benefit of the persons designated in the trust instrument. It is to be noticed that the provision of sub. (5), sec. 2081, Stats., is not found in the statutes of New York, and hence the decision under the New York statute is not of controlling force in cases where this subdivision of our statute applies. *White v. Fitzgerald,* 19 Wis. 480; *Goodrich v. Milwaukee, supra.*

The circuit court sustained the demurrer to the complaint apparently upon the ground that the contents of this writing show that Mathilde Pietsch intended it as a testamentary disposition and not as an express trust.    The court in its decision declared its doubts in arriving at this conclusion. While some of the phraseology in which the instrument is couched gives weight to this idea, we are convinced that it was not intended to be a testamentary disposition of the maker's property.    The effective parts of the instrument to which we have called attention above clearly and expressly constitute a valid trust and all the other phraseology used in connection therewith is readily harmonized with that intent and object.    It is considered that the complaint, supplemented by the stipulated fact that the defendant bank had the required notice of the execution of the trust instrument before action was begun, states a good cause of action and that the demurrer thereto should have been overruled.

*By the Court.*—The order appealed from is reversed, and the cause remanded for further proceedings according to law.