WARSCO, Administrator, Appellant, vs. OSHKOSH SAVINGS & TRUST COMPANY and others, Respondents.

*December 11, 1923—March 11, 1924.*

*Trusts: Revocation: Control over trust res by trustor: Trust in nature of testamentary disposition: Validity.*

1. The fact that a trust is revocable does not affect its validity. A "revocation" implies its cessation and extinguishment, and when made operates to put an end to the trust, not to carry out its terms.  p. 160.

2. A valid trust implies a donor, a trustee, and a *cestui que trust,* and the donor may be the *cestui que trust* or one of them; but there must be an alienation of the property constituting the

trust to the trustee under such terms that when it is executed a benefit accrues to the *cestui que trust* unless prevented by a condition subsequent resulting from a lawful revocation. p. 160.

3. If the donor has full control and dominion over the trust property so that he can use it as and when he pleases, the trustee becomes his agent to hold the title, invest, sell, and collect income for him, and pay as he directs. p. 160.

4. Where, under an agreement relating to a certificate of deposit, the only thing the donor parted with irrevocably (and that only in case of his death before the trust property was consumed) was that the remainder should go as directed, it was an attempted testamentary disposition of property, and void when not made as required by statute. p. 161.

5. The fundamental element of a trust is that the property, so long as the trust lasts, is irrevocably devoted to the benefit of the *cestuis que trust,* of whom the donor may be one. p. 162.

6. An instrument whereby the donor retains or may retain the whole beneficial interest in the trust property by the execution of the instrument according to its terms does not constitute a valid trust. p. 162.

7. A devise or bequest in trust which is subject to the future directions of the donor is void unless executed in conformity with the statute of wills. p. 162.

APPEAL from a judgment of the circuit court for Winnebago county: FRED BEGLINGER, Circuit Judge. *Reversed.*

Action to recover moneys disbursed under the following trust agreement executed July 25, 1921:

"Indenture made this 25th day of July, 1921, between Gust Warsco, called the 'settlor,' of the one part, of the city of Oshkosh, Wisconsin, and the *Oshkosh Savings & Trust Company,* a corporation organized under the laws of the state of Wisconsin, party of the second part:

"Whereas, the settlor is entitled in his own right to a certificate of deposit dated July 25, 1921, No. 197,931, issued by the Old Commercial National Bank of Oshkosh to Gust Warsco or (Mrs. Otto) *Dora E. Putzke,* for the sum of four thousand forty-one dollars and ninety-four cents ($4,041.94), payable in current funds twelve months after date, with interest at three per cent. per annum; and being desirous of settling same in the manner hereinafter appearing, has transferred said certificate to the said party of the

second part, *Oshkosh Savings & Trust Company,* to the intent that it may stand possessed thereof and of the income of the same, upon the trust and with and subject to the powers hereinafter declared and conferred:

"Now this indenture witnesseth: first, the settlor hereby irrevocably directs and declares that the trustee shall henceforth stand possessed of said certificate of deposit, and all moneys due thereon, and of the income therefrom, upon the trusts herein expressed, that is to say: from time to time during the life of the settlor the trustee shall pay to him so much of the said income as shall accrue during his life, or shall receive and stand possessed of the same in trust for the settlor.

"And further to pay from the income or principal to *Dora E. Putzke* such sum or sums of money as the settlor may direct the trustee to pay to her out of said moneys, or which may be necessary for the comfortable care, maintenance, and support of said settlor during his life.

"After the death of the settlor the trustee shall stand possessed of the balance of said moneys in its hands arising out of the said certificate of deposit so assigned and transferred to said trustee, and out of said moneys shall pay the expenses of the last sickness and funeral expenses of the settlor, and pay whatever remains of the principal to the said *Dora E. Putzke.*

"The party of the second part as aforesaid shall hold the said trust separate and apart from other trust property held by it; and shall at any time, on the request of said Gust Warsco, turn over and pay to him any of the moneys in its hands derived from the said certificate of deposit, without the consent of the said *Dora E. Putzke.*

"And for the purpose of more fully carrying out the provisions of this instrument, the said party of the first part doth hereby constitute and appoint the said party of the second part, and its successor and successors, said trustee, who may from time to time vary the investment of all of said property, being subject to the trust hereof.

"The settlor may at any time during his life appoint a new trustee of the trust hereby created, in place of said party of the second part."

The settlor died September 10, 1921, and the defendant

*Oshkosh Savings & Trust Company* then had on hand the full amount of $4,041.94 belonging to the trust.    It paid funeral expenses in the sum of $446 and itself for services $10, and paid the balance over to *Dora E. Putzke.*    She paid $500 to Lydia Hunter, one of the heirs of the deceased.

The court held that there was a valid active trust and that the defendant *Oshkosh Savings & Trust Company* had executed it according to its terms, and entered judgment dismissing plaintiff's complaint upon the merits.    The plaintiff appealed.

For the appellant there was a brief by *Cady, Strehlow & Kaftan* of Green Bay, and oral argument by *Max H. Strehlow.*

For the respondent *Oshkosh Savings & Trust Company* there was a brief by *Weed & Hollister* of Oshkosh, and oral argument by *Harry I. Weed.*

For the respondents *Putzke* there was a brief by *John W. Hume* of Oshkosh.

The following opinion was filed January 15, 1924:

VINJE, C. J.    The plaintiff does not seek to recover for the heirs the amount of $446 spent for funeral expenses, the sum of $500 paid to Lydia Hunter, nor the sum of $10 retained by the *Oshkosh Savings & Trust Company* for services, but only the balance paid over to *Dora E. Putzke,* $2,000 of which was invested in a house and lot described in the findings.

It appears from the evidence that at the time the trust agreement was executed the deceased gave in drafts $500 to each of his nine children except Lydia Hunter, leaving him the amount turned over to the trustee.    He was desirous of disposing of all his property not needed for his own maintenance.    The amount so needed he wanted to keep, and he also wanted to make disposition of what remained at his death.    His lawyer suggested a will, but he was opposed to wills because there was so much litigation over them.    So

after consultation with the lawyer and the officers of the trustee the agreement set out in the statement of facts was made. The question arises, Does it create a valid trust? It is claimed on the part of the defendants that the agreement comes within the case of *Pietsch v. Marshall & Ilsley Bank,* 164 Wis. 368, 160 N. W. 184. The plaintiff claims the case is not in point because there the trust was not revocable, while here it is claimed it is revocable. No difficulties arise from the fact that a trust is revocable. That does not affect its validity. *McEvoy v. Boston Five Cents Sav. Bank,* 201 Mass. 50, 87 N. E. 465; 26 Ruling Case Law, 1206. Indeed, in an early day trusts not revocable were closely scanned by the courts to see that they were voluntary and understandingly made. 26 Ruling Case Law, 1209.

In the instant case the trust is not revocable at all, but its provisions are such that the settlor may, under the terms of the trust, demand every cent from the trustee, for the agreement provides that the trustee "shall at any time, on request of said Gust Warsco, turn over and pay to him any of the moneys in its hands derived from the said certificate of deposit without the consent of the said *Dora E. Putzke.*" In demanding all the money the trust would be executed according to its terms. A revocation implies the cessation and extinguishment of the trust, and when made operates to put an end to it, not to carry out its terms.

A valid trust implies a donor, a trustee, and a *cestui que trust.* The donor may be the *cestui que trust* or at least one of the *cestuis que trustent.* But there must be an alienation of the donor's property constituting the trust to the trustee and under such terms that when the trust is executed a benefit accrues to a *cestui que trust* unless prevented by a condition subsequent resulting from a lawful revocation of the trust. If the donor has full control and dominion over the trust property, so that according to the terms of the trust he can use it as and when he pleases, the trustee becomes his mere agent to hold title to the property, invest, sell, and collect income for him and pay as he directs. The

donor has parted with no dominion over his property nor any part thereof by the terms of the trust, and such an agreement is no valid trust agreement.

In the present case the only thing the donor parted with irrevocably, and that only in case of his death before the trust property was consumed, was that the remainder of the trust property should go as directed. But that was an attempted testamentary disposition of property and not made in pursuance of the statute.

The case is identical in its main facts with the case of McEvoy v. Boston Five Cents Sav. Bank, 201 Mass. 50, 87 N. E. 465. The court there said:

"The trust in this case may be considered first in reference to its effect on the property during her life, and then in reference to its effect upon what might remain after her death. The first statement of the trust by the assignor in the assignment is in these words: 'Said trustee shall pay to me such moneys as I may demand of him at any time during my life until I have used the amount conveyed to him by me by this deed.' This gave her the right to demand any part or the whole of the money at any time, for any use that she chose to make of it. It left her the sole beneficial owner of it, with an absolute power of disposition as long as she lived. As against her, therefore, the only practical effect of the instrument during her lifetime was to give the trustee a right to collect and hold the property until she should ask for it. Her rights as beneficial owner during her life were not limited in any material way. She could revoke the trust at any time, or she could demand and receive from the trustee all the money, at any time, under the trust, and then do with it what she chose. . . . The other part of the trust created by the instrument in the present case relates solely to the disposition of the property after the assignor's death. It follows that the only material effect of the instrument was testamentary, and that it cannot be given effect under our statutes, which permit a testamentary disposition of property only by a duly executed will."

The above statement is equally applicable to this case. When the distinction between the power to revoke a trust and the retention of the complete control of the trust prop-

erty or its proceeds by the terms of the trust is kept in mind difficulties vanish—the one destroys the trust, the other executes it according to its terms, and the donor need part with nothing.

In *Pietsch v. Marshall & Ilsley Bank,* 164 Wis. 368, 160 N. W. 184, irrevocable trusts were created and the donor did not have full control and dominion over all the trust property as the donor in this case had.

The fundamental element of a trust is that the trust property, so long as the trust lasts, is irrevocably devoted to the benefit of certain specified persons called *cestuis que trustent,* of whom the donor may be one.   3 Bouv. Law Dict. 3328. Some one must by the execution of the trust be benefited in a manner or degree different from that which would have resulted had no trust been created.    Hence an instrument whereby the donor retains or may retain the whole beneficial interest in the trust property by the execution of the instrument according to its terms constitutes no valid trust.    *Russell v. Webster,* 213 Mass. 491, 100 N. E. 637.   In such cases the so-called trustee is only the agent of the donor. And it has uniformly been held that a devise or bequest in trust which is subject to the future directions of the donor is void unless executed in conformity with the statute of wills.   See note to *Atwood v. Rhode Island H. T. Co.* (275 Fed. 513) in 24 A. L. R. 177, and cases cited.

· It follows from what has been said that no valid trust was created by the instrument and that the plaintiff is entitled to possess himself of the proceeds paid to the defendant *Dora E. Putzke* except as previously stated, for the purpose of making distribution thereof according to law.

· *By the Court.*—Judgment reversed, and cause remanded for further proceedings as indicated in the opinion and according to law.

A motion for a rehearing was denied, with $25 costs, on March 11, 1924.