## Sullivan's Petition

*Samuel E.* and *J. W. Bertolet,* for petitioners.
*George B. Balmer,* for respondents.

MARX, P. J., April 23, 1938.—This matter arises upon petition and demurrer. The entry of a demurrer is in violation of rule 15 of the Pennsylvania Rules of Equity Practice of the Supreme Court must, accordingly, be ignored. Examination of the demurrer, however, discloses that it alleges, inter alia, want of jurisdiction in this court. We will ignore the demurrer and will accept the pleading as an answer challenging the jurisdiction of the court.

The allegations of the petition, being taken as true and admitted, we find as follows:

The Pennsylvania Trust Company, mortgagee, took and owned the bond and mortgage of Matthan H. Gery and Addison H. Gery, dated July 14, 1931, in the sum of $10,000. The mortgage was a lien on the real estate therein described, situate in Ontelaunee Township, Berks County. Donald S. Sullivan, Robert J. Sullivan, and Marjorie S. Duffy became the owners of a one-half interest in said bond and mortgage, each being the individual owner of one third of said one-half interest. The Pennsylvania Trust Company and, subsequently, Edward D. Trexler, Louis H. Rothrauff, and Charles H. Kershner, liquidating trustees of said The Pennsylvania Trust Company, were the owners of the remaining undivided one-half interest in said bond and mortgage. Record title to the bond and mortgage remained in The Pennsylvania Trust Company, notwithstanding the aforesaid change of interest. On or about July 15, 1935, the owners of all interests in said bond and mortgage, being the petitioners, liquidating trustees aforesaid, and respondents, Donald S. Sullivan, Robert J. Sullivan, and Marjorie S. Duffy (hereinafter called "grantors"), by writing, a copy whereof, marked "Exhibit A", is attached to the petition, entered into an agreement with the Berks County Trust Company (hereinafter called "grantee"), relative to the aforesaid bond and mortgage and the administration thereof. The grantors stipulated, as a moving cause to the execution of the agreement, "the ad-

vantage from union of interest and concert of action." They covenanted and agreed to deposit said bond, with all unpaid interest thereon, with the grantee and to furnish such transfers as might be needed to vest in said grantee complete title to the bond and the accompanying mortgage. They ask, and the grantee agrees to execute and deliver, to the grantors certificates of participating interests in the bond and mortgage. They sold, assigned, transferred, and delivered to said grantee the bond and their respective interests in the mortgage and they irrevocably constituted and appointed the Berks County Trust Company their "sole attorney, agent and trustee, for the purpose of carrying out this agreement and exercising the powers . . . [therein] . . . conferred". The grantee was authorized "to examine and investigate the premises upon which said mortgage is secured, to employ counsel, agents and accountants and" others desired. They authorized the grantee to take any action which, in the discretion of said grantee "may seem proper", and specifically authorized the collection, by any means, of principal and interest of the bond and mortgage; to distribute the net amount of such collections among those entitled; to sell the deposited bonds at their face value and interest; to proceed by foreclosure of the mortgage to a sale of the property covered and to become purchaser of said property, at a price to be determined by said grantee and to take title as trustee for the grantors; to pay costs of foreclosure proceedings, taxes, and necessary expenses; to make repairs necessary to make the property tenantable out of moneys received as interest on the mortgage or as rents or under assessments upon the holders of the certificates. The grantors agreed to "indemnify and pay all the actual expenses of foreclosure, including counsel fees, . . ." taxes accrued on the mortgaged premises and, in the event of failure to pay, the grantee shall have the right to pledge the bond deposited, or the interests of the certificate holders in the mortgaged premises, to raise funds necessary to the aforesaid payments. In

the event of foreclosure and purchase, the grantee is authorized to maintain the property in repair, pay taxes and insurance, collect rents, and exercise supervision. They authorized the sale of the mortgaged and purchased premises, "at a price which you deem proper", and covenanted "if you" (grantee) "secure the consent in writing of two-thirds in amount of the certificate holders, you are directed to sell and convey the same . . . and give a good title . . . in fee simple". After the payment of foreclosure costs, necessary repairs, taxes, and expenses, the grantee is directed to pay the net income, pro rata, to the depositing bondholders. In the event that the proceeds of a sale of the premises must be reduced by payment of costs, taxes, and foreclosure charges, the net balance of such proceeds shall be distributed, pro rata, among the certificate holders. The grantee shall receive, as compensation, five percent of the gross rental income of the property and, in the event of a purchaser being obtained by them, shall receive a realtor's commission of five percent on the sale price. In the event of a purchaser having been obtained through others the sale price shall be subject to the payment of reasonable expenses. In the event the mortgage is not foreclosed, the compensation shall be modified. All moneys received and held by The Pennsylvania Trust Company, for the benefit of the owners of the aforesaid interests, as well as all assets incident thereto, were to be turned over to the Berks County Trust Company and by them all overdrafts were to be assumed and reimbursement was to be made. The agreement provided that the grantee should not be liable or responsible for any action taken in good faith or for any act or omission of any agent or employe acting in good faith, or in any case, except for its own wilful misconduct.

The bond and mortgage were assigned to the grantee, Berks County Trust Company and, the mortgagors having defaulted, the mortgage was foreclosed and the mortgaged premises were purchased by said assignee, under a deed poll, dated November 13, 1935. The Berks County

Trust Company having administered under the aforesaid agreement of July 15, 1935, now reports, for reasons fully set forth in the petition, that the income of the premises is insufficient for the proper maintenance thereof, that the premises have depreciated and are still depreciating in value, and that, in its opinion, the premises should be sold. It further reports that, having received a bona fide tender of purchase of a portion of the premises, the tender was approved by petitioners, but not by respondents, wherefore, the "consent in writing of two-thirds in amount of the certificate holders" was not obtained and the tender was declined. Petitioners now seek the termination of the trust or office under the aforesaid agreement.

The only question to be now considered is whether this court has jurisdiction of the subject matter, under the provisions of section 9 of the Orphans' Court Act of June 7, 1917, P. L. 363, as amended by the Act of June 26, 1931, P. L. 1384. That section reads:

"The jurisdiction of the several orphans' courts, whether separate or otherwise, shall extend to and embrace. . . .

"(*n*) The control, removal, discharge, and settlement of accounts of trustees of trusts inter vivos."

Is this a trust inter vivos within the intent and purpose of the amending act?

The statute furnishes no definition. The name or designation given the estate or the intermediary is not conclusive. What is called a trust may well be an agency, a guardianship, or a bailment. A trust has elements present in all of these and yet differs in essential respects. We are here concerned with the question whether the relationship established or the device erected on the terms of the agreement of July 15, 1935, as accepted on August 21, 1935, is a "trust inter vivos" under the aforesaid Act of 1931. If it should prove to be anything else, the jurisdiction of this court will fail.

In In re Miller's Estate, 19 D. & C. 141, it was held that a letter of attorney created an agency and not a

trust recognizable under the 1931 amendment to the Fiduciaries Act of 1917.

In Reading National Bank & Trust Company's Account, 22 D. & C. 654, this court declined jurisdiction of the account of the corporate trustee.

Jurisdiction does not extend to trusts arising by operation of law: Shaffer's Estate, 21 D. & C. 90; nor to those arising from an agency: Jenkins' Estate, 20 D. & C. 671, or an assignment for creditors: In re Leinenbach's Petition, 35 Schuyl. L. R. 25.

It is probable that jurisdiction was extended to trusts inter vivos to answer the need shown in cases like Douglas' Estate, 303 Pa. 227, and Althouse's Estate, 23 Berks 192. That will not warrant a conclusion, however, that any office of trust outside the realm of testamentary trusts was thereby brought under the jurisdiction of the orphans' court.

This instrument frequently designates the grantee "trustee", but it also constitutes the grantee the "sole attorney, agent and trustee" for the contracting parties. It reposes title in the grantee, but withholds a trustee's unqualified right to convey the title. Before the right to convey goes the requirement of assent by not less than two thirds in interest of the certificate holders. Powers of administration are specifically enumerated. All are incident to authority under a trust, but other trust powers are circumscribed or withheld. The holding of title by a trustee for all, with a deposit of individual interests, was essential for the protection of each interest against the others, but, that accomplished, the individuals withheld all but enumerated powers and authority.

The elements of trusts and agencies, in a general way, are thus outlined:

"It is clear that agency and trust retain a common element in the fiduciary character of each. They are both fiduciary relations in the sense that in both the intermediary is held to a high standard of honesty, must admit no selfish interest, and cannot delegate the performance

of discretionary duties. Aside from this, however, there seem to be no striking resemblances and many marked differences": Bogert on Trusts and Trustees, sec. 15, p. 46.

By way of distinction it is said in A. L. I. Restatement of Trusts, §8:

"*a. Title.* A trustee has title to the trust property; an agent as such does not have title to the property of his principal, although he may have powers with respect to it.

"*b. Control.* An agent undertakes to act on behalf of his principal and subject to his control; . . . a trustee as such is not subject to the control of his beneficiary, except that he is under a duty to deal with the trust property for his benefit in accordance with the terms of the trust and can be compelled by the beneficiary to perform this duty.

"*c. Liability.* An agent may subject his principal to personal liabilities to third persons; a trustee cannot subject the beneficiary to such liabilities. . . .

"A person may be at the same time both an agent and a trustee for the same person. If an agent is entrusted with the title to property for his principal, he is a trustee of that property." Illustrating the last notation, the text continues:

"1. A, the owner of shares of stock, delivers the certificates to the B Trust Company to hold and deal with as custodian, to receive the income and pay it to A, and with power to sell the shares and to reinvest the proceeds as A may direct. In order to carry out these purposes the shares are registered in the name of the trust company. The trust company is agent of A, and, since it holds the title to the shares because of the registration of the shares in its name, it is also trustee of the shares for A."

In the A. L. I. Restatement of Agency, we read in

12(*c*): ". . . trustees as such . . . have no power to impose personal liability upon those on whose account they act. A trustee may, however, also be an agent and is such if appointed by the beneficiary and subject to his directions."

Section 14(*b*) provides: ". . . Where the existence of an agency relationship is not otherwise clearly shown, as where the issue is whether a trust or an agency has been created, the fact that it is understood that the person acting is not to be subject to the control of the other as to the manner of performance determines that the relationship is not that of agency."

Section 14(*c*) provides in part: ". . . A trustee, that is, one holding property in trust for another and subject to equitable duties to deal with the property for the other's benefit, may or may not be subject to control in the management of the property by the one for whose benefit he is required to act . . .".

"Agency is formed with the thought of constant supervision and control by the principal. Trust is based on the idea of discretion in the trustee and guidance by the settlor or cestui only to a limited extent and when expressly provided for": Bogert on Trusts and Trustees, sec. 15, p. 50.

"If the donor has full control and dominion over the trust property, so that according to the terms of the trust he can use it as and when he pleases, the trustee becomes his mere agent to hold title to the property, invest, sell, and collect income for him and pay as he directs. The donor has parted with no dominion over his property nor any part thereof by the terms of the trust, and such an agreement is no valid trust agreement": Warsco, Admr., v. Oshkosh Savings & Trust Co. et al., 183 Wis. 156, 160, 161, 196 N. W. 829.

In 1 Mechem on Agency (2d ed.) §42, the law is thus summarized:

"A trust involves control of property; agency may be totally disconnected with any particular property. The trustee holds a legal title; the agent has usually no title at all. The trustee may act in his own name; the agent acts regularly in the name of his principal. Trust is not necessarily a contractual relation; agency is properly to be so regarded. A trust does not necessarily or even

usually involve any authority to enter into contracts which shall bind another; the authority to make such contracts is the distinguishing characteristic of agency."

A study of the elements of the agreement, in the light of the recited requirements and distinctions, leads to the conclusion that the Berks County Trust Company, grantee, held title as trustee for the contracting parties, but the powers and authority to act in relation to that title and the substance of the estate were those of an agent. Petitioners here seek relief in respect to the administration of the asset and the transfer of the title, both resting in the contract of agency. The orphans' court is without jurisdiction and the petition and citation are accordingly dismissed.